IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KENNETH HAMPTON, *et al.*<br><br>*Defendants.* | CRIMINAL ACTION<br>NO. 15-00302 |

**PAPPERT, J.**  May 10, 2017

**MEMORANDUM**

On July 7, 2015 a grand jury indicted Kenneth Hampton, Ellis Hampton, Terrell Hampton and Roxanne Mason for violations of 18 U.S.C §§ 2, 371, 1343, 1349, and 1028A. (ECF No. 1.) A Superseding Indictment was filed April 19, 2016 and a Second Superseding Indictment, necessitated by Ellis Hampton's death, followed on September 20, 2016. (ECF Nos. 86 & 124.) The Second Superseding Indictment alleges that the Defendants identified abandoned properties, forged deeds to those properties and then, among other things, used them to live in and defrauded government programs and third-party buyers. Trial begins on June 1, 2017. On April 6, 2017 the Government moved to admit evidence of Kenneth's impecuniousness. (ECF No. 214.) Kenneth filed a response on April 14, (ECF No. 220), and the Court held a hearing on April 27, (ECF No. 229). The Court grants the government's motion in part and denies it in part.

**I.**

The Government seeks to present evidence of Kenneth's financial condition for three purposes. First, as circumstantial evidence that the Defendants *knowingly* recorded false deeds because Kenneth, as the alleged leader of the scheme, lacked the money necessary to purchase the properties. (Gov't Mem., at 3.) Second, as evidence to

1

negate any suggestion that Defendants legitimately purchased the properties. Finally, the Government also contends that Kenneth's financial condition undermines the statements Kenneth allegedly made about purchasing the properties. (*Id.*)

Kenneth contends that this evidence is irrelevant and thus inadmissible under Federal Rule of Evidence 401. He argues that the Government's evidence shows many of the properties were exchanged for $1.00 consideration, undermining the Government's argument that his financial condition would have prevented him from purchasing them. *See* FED. R. EVID. 401; (Def.'s Mem., at 2).

## II.

Rule 401 "does not raise a high standard." *Moyer v. United Dominion Idus., Inc.*, 473 F.3d 532, 544–54 (3d Cir. 2007) (quoting *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2004)). Instead, relevant evidence is defined broadly: evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence. Fed. R. Evid. 401(a); *United States v. Starnes*, 583 F.3d 196, 212–14 (3d Cir. 2009) (evidence is irrelevant only if "it has no tendency to prove a consequential fact.").

Evidence of a defendant's poverty is traditionally viewed with suspicion. *See, e.g.*, *United States ex rel. Mertz v. New Jersey*, 423 F.2d 537, 542 (3d Cir. 1970) ("The lack of money by A might be relevant enough to show the probability of A's desiring to commit a crime in order to obtain money. But the practical result of such a doctrine would be to put a poor person under so much unfair suspicion and at such a relative disadvantage that for reasons of fairness this argument has seldom been countenanced as evidence of the graver crimes . . . ." (quoting II WIGMORE, EVIDENCE § 392 (3d ed.

1940))).  Evidence of a criminal defendant's financial condition is therefore inadmissible as irrelevant for many purposes, such as proving motive.  *See, e.g.*, *United States v. Weller*, 238 F.3d 1215, 1221 (10th Cir. 2001) (holding that evidence of a defendant's finances are minimally probative to show motive, and acknowledging that "even wealthy people may commit financial crimes in hope of amassing still more money.").

Nevertheless, evidence of a defendant's impecuniousness may be relevant to prove a defendant's knowledge or to show circumstantial evidence of his guilt.  *See United States v. Weller*, 238 F.3d 1215, 1221 (10th Cir. 2001) (admitting evidence of sudden change in defendant's financial status as circumstantial evidence of guilt); *see also United States v. Sanchez-Corcino*, 85 F.3d 549, 555 (11th Cir. 1996) ("The prosecutor was well within the bounds of propriety in arguing to the jury that the most reasonable inference from the evidence of [the defendant's] impecunious state was that prospective purchasers from him were fronting the money for his gun purchases."); *cf. United States v. DeMuro*, 677 F.3d 550, 559 (3d Cir. 2012) (admitting evidence of defendant's personal spending to show defendant's "conspiratorial purpose" in knowingly failing to pay taxes).

The Government does not seek, nor will they be permitted, to use Kenneth's financial condition to demonstrate his motive or propensity to commit the crimes alleged.  *See* FED. R. EVID. 401 & 403; *cf. United States v. Mitchell*, 172 F.3d 1104, 1108 (9th Cir. 1999) ("[E]vidence of poverty is not admissible to show motive, because it is of slight probative value and would be unfairly prejudicial to poor people charged with crimes.").  Yet Kenneth's impecuniousness is circumstantial evidence of an element the Government must prove and is therefore relevant to its case-in-chief.  To establish that

the Defendants committed wire fraud, the Government must prove that they: (1) knowingly and willfully participated in a scheme or artifice to defraud; (2) with the specific intent to defraud; and (3) used interstate wire communications in furtherance of the scheme. *United States v. Andrews*, 681 F.3d 509, 518 (3d Cir. 2012) (citing 18 U.S.C. § 1343). To prove a conspiracy, the Government must establish that: (1) the Defendants agreed to defraud the United States; (2) the defendants intentionally joined the agreement; (3) one of the conspirators took an overt act; and (4) that overt act was in furtherance of the conspiracy. *United States v. Rigas*, 605 F.3d 194, 205–06 (3d Cir. 2010) (citing 18 U.S.C. § 371).

The conspiracy the Government alleges consists of knowingly devising a scheme to defraud the City of Philadelphia, the Commonwealth of Pennsylvania, the United States and third-party purchasers by obtaining money and property by means of false or fraudulent pretenses, representations and promises through use of the wires. (2d Superseding Indictment, at 12, ECF No. 124.) The Government must prove that each of the Defendants knew of the overarching scheme and acted "in furtherance of the illicit enterprise." *Dobson*, 419 F.3d at 237. "Unwitting participation in a fraudulent scheme is not criminal under [the statute]"—"the relevant inquiry is not whether the defendant knowingly made *any* misstatement, but whether she did so with respect to the overarching fraudulent scheme—that is, the particular 'illicit enterprise.'" *Id.* The alleged scheme here involved acquiring property through illegitimate means, rather than legitimately, such as purchasing the deeds for value. Evidence that the Defendants knew a co-conspirator could not afford those purchases is appropriate circumstantial evidence that he or she was aware of the alleged scheme and therefore

4

participated in it knowingly. *See United States v. Onque*, 665 F. App'x 189, 197 (3d Cir. 2016); *United States v. Martin*, 803 F.3d 581, 589 (11th Cir. 2015).

At oral argument, Kenneth's counsel argued that *United States v. Chaney*, 446 F.2d 571 (3d Cir. 1971) limits evidence of a defendant's financial state to the government's rebuttal or situations in which the defendant enjoys a sudden increase in wealth. Indeed, *Chaney* stated that "the sudden and unexplained acquisition of wealth by an impecunious person at or about the time of a theft which he had an opportunity to commit, is competent evidence of guilt." *Id.* at 575. The Court's ruling is not inconsistent with *Chaney*, which does not confine evidence of a defendant's financial state to that narrow circumstance.

### III.

To the extent evidence of Kenneth's financial condition is relevant, its risk of unfair prejudice must not substantially outweigh its probative value. FED. R. EVID. 403. The Government proposes to prove that the Defendants lacked the resources to purchase the homes at issue in two ways: (1) through recorded oral and written statements of the alleged coconspirators admitting they lacked money; and (2) through oral and written statements of the alleged coconspirators that show they participated in "programs for the economically disadvantaged." (Gov't Mem., at 5.)

The Government may introduce evidence of the alleged coconspirators' written and recorded oral statements admitting they lacked money. This category of evidence clears Rule 403's hurdle. While there may be some prejudice in admitting this evidence, *see* WIGMORE, EVIDENCE § 392, that prejudice does not substantially outweigh the evidence's probative value. Evidence that the Defendants participated in social

5

welfare programs will not be admitted because it is of little, if any, probative value given the Government's other proposed evidence and would also be highly prejudicial.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.