IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION |
| KENNETH HAMPTON | NO. 15-00302 |

**PAPPERT, J.**                                                         **July 28, 2020**

**MEMORANDUM**

Kenneth Hampton asks the Court to grant him compassionate release. Because extraordinary reasons do not warrant Hampton's release and the 18 U.S.C. § 3553(a) factors counsel against granting relief, the Court denies the Motion.

I

In 2017, a jury found Hampton guilty on one count of wire fraud conspiracy, seventeen counts of wire fraud and attempted wire fraud and two counts of aggravated identity theft. *See* (Jury Verdict Form 1–4, ECF No. 286). The Court sentenced him to a total of 200 months' incarceration. *See* (Judgment 1, ECF No. 331). So far, he has served about thirty-two months of that sentence and is scheduled for release in September of 2031. *See* (Gov't Resp. 3, ECF No. 426).

Following the onset of the COVID-19 pandemic, Hampton petitioned the warden of his prison for compassionate release. *See* (*id.* Ex. A, ECF No. 426-1). Without mentioning any health problems or vulnerability to COVID-19, Hampton asked for release so that he may care for ill siblings and children. (*Id.* at 2–5.) The warden denied the request.

Having exhausted his prison remedies, Hampton now moves *pro se* for the Court

to grant him compassionate release under 18 U.S.C. § 3582(c)(1)(A).[1] *See* (Mot. for Release 1, ECF No. 411); (Suppl. Mot. for Release 1, ECF No. 418). He no longer seeks release so that he may care for ailing relatives. *See generally* (*id.*); (Mot. for Release). Instead, he claims that unspecified "[c]ardiac issues" and "[h]ypertension" put him at extreme risk if he were to contract COVID-19. (*Id.* at 3.) Hampton's medical records confirm that he has been prescribed medication for hypertension but reveal no other health problems. *See generally* (Gov't Resp. Ex. B, ECF No. 426-2).

## II

A district court may reduce an inmate's sentence as a form of compassionate release only if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). But before releasing an inmate a court must also "consider[] the factors set forth in section 3553(a)." *Id.* Relevant factors include "the history and characteristics of the defendant" and the need for the sentence "to promote respect for the law" and "protect the public from further crimes of the defendant." *Id.* § 3553(a)(1), (2)(A), (C).

Hampton's hypertension does not present an extraordinary and compelling reason for his release. The Centers for Disease Control and Prevention reports that there is "mixed evidence" that hypertension may "put individuals at increased risk for severe illness from COVID-19." Coronavirus Disease 2019, *Your Health*, Center for

---

[1] Hampton also asks the Court to convert his prison term to one of home confinement *See* (Mot. for Release 2, 3). The Court, however, is powerless to grant that request. Congress has invested the Bureau of Prisons—not the courts—with the discretion to determine whether home confinement is appropriate for a given prisoner. *See United States v. Pettiway*, No. CR 08-129, 2020 WL 3469043, at *2 (E.D. Pa. June 25, 2020) ("Congress did not provide the courts with the authority to release inmates into home confinement . . . ."); *United States v. Rodriguez-Collazo*, No. 14-CR-00378-JMY, 2020 WL 2126756, at *3 (E.D. Pa. May 4, 2020) (same); *see also United States v. Tapia*, 564 U.S. 319, 331 (2011) (explaining that once "a court sentences a federal offender, the BOP has plenary control" over where the prisoner serves his sentence).

Disease Control and Prevention, https://www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/evidence-table.html (last visited July 28, 2020). Hampton's hypertension, however, is on the mild side. *See, e.g.*, (Gov't Resp. Ex. B, at 12). This mild hypertension—absent any evidence of other risk factors—is not enough to justify releasing Hampton. *Cf. United States v. Takewell*, No. CR 3:14-00036, 2020 WL 4043060, at *2–3 (W.D. La. July 17, 2020) (reaching same conclusion for an obese inmate with hypertension); *United States v. Jones*, No. 2:18-CR-137, 2020 WL 3969912, at *4 (N.D. Ind. July 14, 2020) (same for inmate with hypertension and Type II Diabetes); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (same for an obese inmate with hypertension); *United States v. Hayes*, No. 3:18-CR-37-J-34JBT, 2020 WL 3611485, at *2 (M.D. Fla. July 2, 2020) (same); *United States v. Wax*, No. CR 14-251 (FLW), 2020 WL 3468219, at *2–3 (D.N.J. June 25, 2020) (same).

Even if extraordinary and compelling reasons did exist, the § 3353(a) factors counsel against releasing Hampton. As the Court observed at sentencing, Hampton is "incapable of expressing any sincerity, much less the truth." (Gov't Resp. 4 (quoting Sentencing Tr. at 95.)) Nothing has changed. To the warden, Hampton professed that had never used "drugs or alcohol in his entire life." (*Id.* Ex. A, at 4.) To the Court, he claims to have been a "daily user of alcohol, extacy [sic]" and other drugs for more than a decade. (Suppl. Mot. for Release 2.) Beyond this reflexive dishonesty, Hampton has lived a life of crime and deception. *See* (PSR ¶¶ 49–56). His "history and characteristics" and continuing lack of "respect for the law" therefore render him a particularly poor candidate for compassionate release. 18 U.S.C. § 3553(a)(1), (2)(A).

Releasing Hampton would also expose the public to a man who is "[un]willing to pursue a legitimate career" and poses a continuing "danger to the public." (Gov't Resp. 3 (quoting Sentencing Tr. at 96)). Faithful adherence to § 3353(a) compels the Court to deny Hampton's Motion.

    An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

4