**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION NO. 15-302 |
| KENNETH HAMPTON | |

**PAPPERT, J.**                                                    **March 22, 2021**

## MEMORANDUM

A jury convicted Kenneth Hampton of conspiracy to commit wire fraud, wire fraud and aggravated identity theft in 2017.  He moves the Court to vacate, set aside or correct his 200-month sentence under 28 U.S.C. § 2255.  For the following reasons, the Court denies the Motion.

### I

On July 7, 2015, a grand jury in the Eastern District of Pennsylvania returned an Indictment charging Hampton, his son, his brother and his then-fiancée with conspiring to fraudulently obtain apparent title to vacant properties.  (ECF 1.)  Hampton and his co-conspirators profited from these thefts by occupying, selling, mortgaging and obtaining grants for those properties.  The grand jury returned a Superseding Indictment on April 19, 2016 and a twenty-count Second Superseding Indictment on September 20, 2016.  (ECF 86, 124.)  Count 1 charged Defendants with conspiracy to commit wire fraud.  (ECF 124.)  Counts 2 through 18 charged them with wire fraud based on various communications sent and received among them, including recorded telephone calls from Hampton to his cohorts while he was in federal prison.  (*Id.*)  And Counts 19 and 20 charged Defendants with aggravated identity theft.  (*Id.*)

Hampton was arraigned on August 5, 2015.  Six days later, he joined his co-conspirator's motion to continue trial.  (ECF 33.)  The Court granted the continuance and set trial for March 7, 2016.  (ECF 50.)  The Court granted Defendants additional continuances on January 8, 2016 and May 18, 2016.  (ECF 66, 100.)  Before the new trial date, Hampton moved for another continuance in light of the Second Superseding Indictment, (ECF 141, 142), and agreed to a waiver of speedy trial.  (ECF 150.)  The Court granted another continuance until January 4, 2017.  (ECF 153.)  Hampton moved a final time for a continuance after receiving new counsel in December of 2016.  (ECF 185.)  The Court granted the continuance in the interests of justice and excluded the additional time under the Speedy Trial Act.  (ECF 186.)  Hampton eventually went to trial on June 6, 2017.  About a week later, the jury found him guilty on all charges.  (ECF 284, 286.)

Hampton moved for acquittal, or for a new trial, arguing the evidence failed to show that the conspiracy fell within the limitations period, or that he had the requisite criminal intent.  (ECF 295.)  The Court denied the motion because evidence of Hampton's guilt was overwhelming and there was no danger that the jury's verdict amounted to a miscarriage of justice.  (ECF 323, 324.)

On November 17, 2017, the Court sentenced Hampton within the Guidelines range to 200 months' imprisonment and three years' supervised release.  It also ordered him to pay $174, 043.57 in restitution and a $2,000 special assessment.  Hampton appealed the calculation of the Guidelines range and the reasonableness of his sentence.  The Third Circuit affirmed.  *United States v. Hampton*, 778 F. App'x 98 (3d Cir. 2019).

Hampton petitions the Court *pro se* for relief under 28 U.S.C. § 2255.  (ECF 412.) He raises thirteen grounds for relief against his trial counsel and one ground against appellate counsel.  The Government responded, arguing each ground fails as a matter of law and therefore a hearing is unnecessary.  (Gov't Resp. 12–13, ECF 453.)  The Motion and records of the case conclusively show Hampton is entitled to no relief on any of the claims, and the Court accordingly need not conduct an evidentiary hearing. After reviewing the Motion, the Government's Response and the record, the Court denies the Motion in its entirety.

II

Section 2255(a) of Title 28 of the United States Code permits a prisoner serving a federal sentence to move to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  A petitioner bears the burden of demonstrating his § 2255 motion has merit.  *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005).  Further, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief.  *See United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Pursuant to § 2255(b), a district court should grant a hearing to determine the issues in and make factual findings on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Stated otherwise, where a petitioner "alleges any facts warranting relief under § 2255

3

that are not clearly resolved by the record, the District Court [is] oblig[at]ed to follow the statutory mandate to hold an evidentiary hearing." *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005). When considering a § 2255 motion, a court must "accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). A petitioner need only "raise[] sufficient allegations" that counsel was ineffective in order to warrant a hearing. *United States v. Booth*, 432 F.3d 542, 549 (3d Cir. 2005).

B

The Sixth Amendment guarantees an accused the "right . . . to have the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. The right to counsel is the right to effective assistance of counsel, and counsel can deprive a defendant of that right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). The Supreme Court's two-part test in *Strickland* governs claims for ineffective assistance of counsel. "To succeed on such a claim, the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687).

With respect to *Strickland*'s first prong, to assess "whether a petitioner has demonstrated that his attorney's representation was constitutionally deficient, [courts] look to 'the facts of the particular case, viewed as of the time of counsel's conduct' . . . and evaluate whether counsel's performance 'fell below an objective standard of reasonableness' under 'prevailing professional norms.'" *Vickers v.*

4

*Superintendent Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017) (quoting *Strickland*, 466 U.S. at 688, 690). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Gov't of the Virgin Islands v. Vanterpool*, 767 F.3d 157, 168 (3d Cir. 2014). There is a "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance." *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020) (quoting *Strickland*, 466 U.S. at 689); *see also United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) ("[O]nly the rare claim of ineffectiveness of counsel . . . should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.").

To demonstrate prejudice under *Strickland*'s second prong, the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

A court need not address both *Strickland* prongs "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

## III

Hampton claims his lawyers were ineffective for failing to move to dismiss Counts 19 and 20 in the Second Superseding Indictment (Argument A); failing to move

to suppress incriminating statements (Argument B); failing to challenge the Government's alleged pre-trial delay and statute of limitations (Argument C); failing to move to suppress evidence (Argument D); failing to file a motion he allegedly requested to dismiss the Second Superseding Indictment for speedy trial violations (Argument E); failing to investigate his case and possible defenses (Argument F); failing to move to dismiss purportedly duplicitous counts in the Second Superseding Indictment (Argument G); failing to object to the jury instructions (Argument H); failing to challenge a Government witness's allegedly false testimony (Argument I); failing to object to the Government's leading questions at trial (Argument J); failing to move to exclude relevant, but highly prejudicial, evidence (Argument K); failing to negotiate a plea deal (Argument L); failing to file ten separate objections to the Presentence Investigation Report and argue for a lesser sentence (Argument M); and failing to raise meritorious arguments on appeal (Argument N). *See generally* (Mot. 18–46). The Court addresses each claim in turn.

A

In Argument A, Hampton argues counsel was ineffective for failing to move to dismiss Counts 19 and 20 of the Second Superseding Indictment because they were multiplicitous. (*Id.* at 6.) Counts 19 and 20 charged Hampton with separate instances of aggravated identity theft under 18 U.S.C. § 1028A involving his illicit use of two victims' identities. *See* (Second Supers. Indictment 24–25, ECF 124). The Government responds that this claim fails as a matter of law because "the simultaneous use of separate 'means of identification' of different victims would constitute separate instances of aggravated identity theft." (Gov't Resp. 15.) The Court agrees.

Multiplicity is "the charging of a single offense in separate counts of an indictment." *United States v. Kennedy*, 682 F.3d 244, 254 (3d Cir. 2012). "A multiplicitous indictment risks subjecting a defendant to multiple sentences for the same offense, an obvious violation of the Double Jeopardy Clause's protection against cumulative punishment." *Id.* at 255. Whether an indictment is multiplicitous depends on "whether the legislature intended to make separately punishable the different types of conduct referred to in the various counts." *Id.* (quoting *United States v. Stanfa*, 685 F.2d 85, 87 (3d Cir. 1982)); *see also United States v. Hodge*, 870 F.3d 184, 193–94 (3d Cir. 2017) ("The Supreme Court has noted that '[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent.'") (quoting *Ohio v. Johnson*, 467 U.S. 493, 499 (1984)). Courts also consider "whether proof of one offense charged requires an additional fact that proof of the other does not necessitate." *Stanfa*, 685 F.2d at 87 (citing *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978)).

Count 19 charged Hampton with transferring, possessing and using the name of "GR" during and in relation to wire fraud charged in Counts 2 through 10. (Second Supers. Indictment 24.) Count 20 charged him with using the name of "ER" for the same illegal purpose. (*Id.* at 25.) Section 1028A provides:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). Congress's use of the singular phrase, "a means of

identification of another person," suggests it "intended to make separately punishable" the use of separate identities of multiple people, even if during a single illegal scheme. *See Kennedy*, 682 F.3d at 255; *see also United States v. Tann*, 577 F.3d 533, 537 (3d Cir. 2009) (holding that Congress's use of the phrase "any firearm or ammunition" in 18 U.S.C. § 922(g) suggests simultaneous possession of a firearm and ammunition "supports only one conviction"). Moreover, Counts 19 and 20 required different proof; namely, that Hampton employed separate victims' identities in furtherance of his scheme. *See Stanfa*, 685 F.2d at 87. This conclusion is consistent with other courts that have addressed multiplicity arguments involving § 1028A. *See Smith v. United States*, No. 13-cv-1898, 2014 WL 1315227, at *6 (E.D. Mo. Mar. 28, 2014) (multiple charges under § 1028A for use of multiple stolen identities in a single fraud scheme not multiplicitous); *United States v. Hinojosa*, No. 14-cr-38, 2015 WL 999893, at *9 (N.D. Ga. Mar. 6, 2015) (two uses of the same stolen social security number supported two counts of violating § 1028A); *United States v. Abdi*, No. 13-cr-484, 2014 WL 3828165, at *11 (N.D. Ga. Aug. 4, 2014) (aggravated identity theft charges not multiplicitous where each count charged separate use of the same stolen identity).

Because Counts 19 and 20 are not multiplicitous, Hampton cannot show he was prejudiced by counsel not moving to dismiss them. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

## B

Hampton claims in Argument B that counsel was ineffective for failing to move to suppress statements allegedly taken in violation of the Fifth Amendment and

*Miranda v. Arizona*, 384 U.S. 436 (1966). (Mot. 7–8.)  He contends that while he was in prison for a prior conviction, an Assistant United States Attorney interviewed him in relation to this case and that this interview somehow violated his constitutional rights. (*Id.*)  The Government contests Hampton's characterization of the interview.  (Gov't Resp. 19.)  Assuming the interview occurred as Hampton describes—and setting aside the fact that he does not identify any allegedly incriminating statements—his claim fails because the Government did not introduce statements from the interview at trial. *See Chavez v. Martinez*, 538 U.S. 760, 769 (2003) ("[M]ere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness."); *Strickland*, 466 U.S. at 694 (petitioner must show prejudice in asserting ineffective assistance of counsel claim).

C

Hampton contends in Argument C that counsel was ineffective for failing to move to dismiss the Second Superseding Indictment based on the Government's alleged "preaccusation" delay and failure to comply with the statute of limitations.  As the Government rightly points out, Hampton's counsel filed a motion to dismiss for pre-trial delay and failure to adhere to the statute of limitations.  (ECF 159.)  But after the Government responded and the Court set oral argument, counsel withdrew the motion. Hampton's burden to establish prejudice under these conditions is high, given *Strickland*'s mandate that the Court "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  466 U.S. at 689.

Hampton correctly describes the legal standard for due process claims based on

preindictment delay.  He must show "that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." *United States v. Gouveia*, 467 U.S. 180, 192 (1984).  Instead of attempting to show that the Government's alleged delay was deliberate and prejudicial, Hampton says only that "clearly the government's actions and delay were an intentional device employed to gain tactical advantage and harass [him,] and the delay resulted in actual and substantial prejudice." (Mot. 9.)  That bare conclusion falls woefully short of satisfying the standards for relief under *Gouveia* and *Strickland*.  Similarly, Hampton does not mention his statute of limitations argument after including it in the heading for Argument C.  In any event, the Court already entertained and rejected a statute of limitations argument on its merits in his post-trial motion for judgment of acquittal.  (ECF 323.)

## D

In Argument D, Hampton states counsel was ineffective for failing "to file a requested motion to suppress evidence seized in violation of the Fourth Amendment" even though counsel knew his Fourth Amendment rights were violated.  (Mot. 10.).  He does not say how his Fourth Amendment rights were violated or what evidence counsel should have moved to suppress.  *See generally* (*id.*).

To satisfy *Strickland*'s prejudice prong, Hampton "must show that he would likely have prevailed on the suppression motion and that, having prevailed, there is a reasonable likelihood that he would not have been convicted." *Thomas v. Varner*, 428 F.3d 491, 502 (2005).  He shows neither.  First, because Hampton does not allege any facts supporting his allegation or specify what evidence he believes the Court should

have suppressed, he does not establish that a motion to suppress would have been meritorious.  Second, the evidence against Hampton was overwhelming and included numerous recorded phone calls between him and his co-conspirators as well as email and traditional mail communications.  Absent any allegations showing or suggesting counsel could have successfully moved to suppress the evidence supporting his charges, Hampton cannot show there is a reasonable likelihood the outcome of his case would have been different had counsel filed a motion to suppress.[1]

E

Hampton next argues that counsel was ineffective for "failing to file a requested speedy trial motion to dismiss the indictment." (Mot. 11.)  Although it is unclear from Hampton's Motion, the Court assumes he intended to raise ineffectiveness claims under the Speedy Trial Act and the Sixth Amendment's Speedy Trial Clause.  Both claims are completely meritless.

The Speedy Trial Act requires that trial begin within 70 days of a defendant's initial appearance.  18 U.S.C. § 3161(c)(1).  The speedy trial clock started on August 5, 2015 when Hampton was arraigned.  *See United States v. Willaman*, 437 F.3d 354, 357 (3d Cir. 2006).  The motion for a continuance that Hampton joined six days later paused the speedy trial clock.  *Id.* at 359.  The Court then granted several requests to continue trial, each time excluding the additional time under the Speedy Trial Act.  *See* (ECF 50, 66, 100, 153, 186).  Hampton also expressly waived his Speedy Trial Act rights from

---

[1] Not only has Hampton failed to demonstrate prejudice, "[e]ffective assistance does not demand that every possible motion be filed, but only those having a solid foundation."  *United States v. Swinehart*, 617 F.2d 336, 341 (3d Cir. 1980) (finding counsel was not ineffective for failing to file a motion to suppress that lacked foundation under existing Fourth Amendment case law) (citation omitted).

October 24, 2016 until trial.  (ECF 150.)  Defendants' motions to continue trial and the
Court's orders granting them and excluding the additional time under the Speedy Trial
Act tolled the speedy trial clock from August 11, 2015 until Hampton's trial on June 6,
2017.  Only five total speedy trial days elapsed from Hampton's initial appearance until
trial, so counsel was not ineffective for declining to file a motion under the Act.  *See*
*Sanders*, 165 F.3d at 253 ("There can be no Sixth Amendment deprivation of effective
counsel based on an attorney's failure to raise a meritless argument.").

Hampton arguably brings a constitutional speedy trial claim, as well.  The Sixth
Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the
right to a speedy . . . trial." U.S. Const. amend VI.  In evaluating a Sixth Amendment
speedy trial claim, courts consider: (1) the length of the delay; (2) the reason for the
delay; (3) whether the defendant asserted his speedy trial right; and (4) prejudice to the
defendant.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  To the extent Hampton raises
this claim, he either misremembers his pretrial proceedings, misunderstands applicable
law or thinks he can pull one over on the Court. Whatever the reason for his argument,
it fails.  Although about two years passed between the Indictment and Hampton's trial,
he and his co-conspirators largely caused the delay by requesting several continuances
and the complexity of the case supported a two-year run-up to trial.  Hampton presents
no other reason for the delay, does not allege that he asserted his speedy trial right and
points to no prejudice suffered as a result of the delay.  In short, Hampton comes
nowhere near his burden of demonstrating this claim's merit.  *See Davies*, 394 F.3d at
189.

F

Hampton claims in Argument F that his lawyer was ineffective for failing to investigate his case and possible defenses. (Mot. 20.) He mentions again that counsel failed to file a motion to dismiss the Second Superseding Indictment for multiplicity and states counsel should have known to investigate "all other possible defenses," but does not allege any facts to substantiate his claim. (*Id.*)

To show prejudice under *Strickland*, Hampton must demonstrate that but for counsel's inadequate investigation, there is a reasonable probability that counsel would have found favorable evidence and Hampton would have prevailed at trial. He must "allege with specificity what the investigation would have revealed" and how the fruits of that investigation would have changed the outcome at trial. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *accord United States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008) ("To satisfy *Strickland*'s prejudice prong, [the defendant] must show that, but for his counsel's inadequate investigation, there is a reasonable probability that counsel would have found fingerprint evidence *favorable* to his claim of innocence, thus undermining confidence in his conviction.") (emphasis added). Hampton does not allege what favorable information, if any, counsel's investigation would have revealed, or how it would have helped him. The Government presented overwhelming evidence of Hampton's guilt at trial and he makes no argument that the evidence was incomplete or otherwise inaccurate.

To the extent he intends to argue only that counsel failed to investigate the issue of multiplicity, he cannot show prejudice for the reasons already explained in Part III.A of this Memorandum.

G

In Argument G, Hampton argues counsel was ineffective for "failing to challenge the duplicity counts in the indictment and object to the duplicity counts at trial." (Mot. 21.) He contends, without explanation, that Counts 2 through 18 are duplicitous. (*Id.*) These Counts charge separate acts of wire fraud in relation to a house on Delancey Street in Philadelphia. (ECF 124.) The Government argues this claim fails as a matter of law and the Court agrees. (Gov't Resp. 35–37.)

"Duplicity is the improper combining of separate offenses into a single count." *United States v. Steiner*, 847 F.3d 103, 114 (3d Cir. 2017). The Third Circuit has explained that "[t]o determine whether [counts in an indictment are] duplicitous, we first focus on the 'allowable unit of prosecution' to decide whether the indictment properly charges a violation of the relevant statute." *Id.* at 115. The federal wire fraud statute provides

> [w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. The text of the statute suggests each individual transmission in furtherance of a scheme is a separate unit of prosecution. Courts that have addressed this issue agree. *See United States v. Fermin Castillo*, 829 F.2d 1194, 1199 (1st Cir. 1987) ("It is well established that each use of the wires constitutes a separate crime under 18 U.S.C. § 1343, even if the several uses are in pursuance of but one criminal

enterprise.") (citations omitted); *United States v. Conley*, 833 F. Supp. 1121, 1141 (W.D. Pa. 1993), *vacated on other grounds*, 37 F.3d 970 (3d Cir. 1994) ("The statute violated was 18 U.S.C. § 1343.  That statute, although implicating a scheme to defraud, defines the allowable unit of prosecution as each transmission in furtherance of the fraud."); *see also United States v. Hart*, 524 F. Supp. 381, 383 (E.D. Pa. 1981) ("[A]n examination of the case law and the plain language of the Mail Fraud Statute assures this court that Congress intended each specific mailing to be a separate offense. This is true even though the mailings may be made pursuant to a single scheme to defraud.") (citing *Badders v. United States*, 240 U.S. 391 (1916); *United States v. Calvert*, 523 F.2d 895, 914 (8th Cir. 1975), *cert. denied* 424 U.S. 911 (1976); *United States v. Weatherspoon*, 581 F.2d 595, 601–02 (7th Cir. 1978)).  Counts 2 through 18 charge individual counts of wire fraud based on separate phone calls, emails and telefacsimile messages between Hampton and his co-conspirators.  (Second Supers. Indictment 21–22.)  Accordingly, they are not duplicitous as a matter of law.

## H

Hampton claims in Argument H that counsel was ineffective for failing to object to Counts 19 and 20 as multiplicitous at trial and in the jury instructions.  (Mot. 22.) This argument fails for the reasons explained in Part III.A of this Memorandum.

## I

Hampton next claims in Argument I that his lawyer was ineffective for failing to challenge the alleged false testimony of two Government witnesses at trial.  (*Id.* at 23.) He contends that the purchasers of two properties involved in his scheme testified falsely "about the true price" they paid for the properties.  (*Id.*)  He does not explain

what was false about their testimony except to say that neither witness obtained title insurance.  (*Id.*)

Of course, the Government may not obtain convictions based on false testimony. *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  To establish a claim for false testimony, Hampton would have to show that: (1) the witnesses perjured themselves; (2) the Government knew or should have known the witnesses testified falsely; (3) the testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony could have affected the jury's judgment.  *Haskell v. Superintendence Green SCI*, 866 F.3d 139, 146 (3d Cir. 2017).  Because Hampton advances an ineffective assistance claim based on this alleged false testimony—not merely a prosecutorial misconduct claim—he must also show that counsel performed deficiently by not identifying this false testimony and objecting to it.  Hampton comes nowhere close to satisfying these standards.  He presents no evidence or argument as to why this testimony was false, how the Government knew or should have known it was false or how the false testimony affected the jury's judgment.  Even assuming he could establish the elements of a false testimony claim, he fails to show how counsel was ineffective by failing to identify and object to the false testimony.  Accordingly, Argument I fails.  *See United States v. Thompson*, 117 F.3d 1033, 1035 (7th Cir. 1997) (rejecting defendant's false testimony claim where he "explains neither how he knows th[e] testimony to be false, nor how the prosecution should have known it to be so").

J

In Argument J, Hampton contends counsel was ineffective for not objecting to the Government's leading questions at trial.  Specifically, he argues the Government

used leading questions regarding the price some witnesses paid for two properties in his scheme.  (Mot. 25.)  Like most of Hampton's Motion, Argument J lacks the specificity necessary to sustain a *Strickland* claim.  He points to no specific leading questions and does not explain how or why leading questions in the context of the price a witness paid for a home would have prejudiced him at trial.

Leading questions during direct examination are usually, though not always, discouraged.  FED. R. EVID. 611(c).  Because there is no strict prohibition on leading questions, and because whether or not to object to such questions is "a matter of trial strategy," failure to object "will very seldom constitute objectively deficient representation."  *United States v. Nguyen*, 379 F. App'x 177, 181 (3d Cir. 2010).  To prevail on this claim, Hampton must show that counsel's failure to object to these purported leading questions could not be the result of "reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  And to establish prejudice, he must show that "his counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  *Strickland*, 466 U.S. at 696.  He does neither.

## K

In Argument K, Hampton claims ineffective assistance based on counsel's alleged failure to move to exclude evidence of his prior conviction.  (Mot. 26.)  He says this evidence is unduly prejudicial and that he "suffered unfair prejudice by the use of his prior conviction at trial."  (*Id.*)  Before trial, Hampton's lawyer moved to exclude evidence of his incarceration.  (ECF 213.)  The Government opposed the motion, (ECF 216), but the parties eventually agreed to exclude any reference to Hampton's

incarceration.  (Gov't Resp. 42.)  Undeterred by that agreement, Hampton insists now that counsel was deficient for not moving to exclude this evidence.  But he fails to explain how the parties' agreement did not protect him from the prejudice he claims he suffered at trial.  Nor does he point to any part of his trial where the Government used his prior conviction against him.  Because overwhelming evidence established Hampton's culpability and guilt at trial, and because he fails to identify even a single instance of the Government using evidence of his prior conviction at trial, Argument K fails.

## L

Next, Hampton argues in Argument L that counsel was ineffective for "failing to negotiate plea options with the Government."  (Mot. 27.)  He says that "had counsel negotiated [one, he] would have entered a favorable plea deal with the Government for the possibility of a significantly shorter sentence."  (*Id.*)  The Government responds that it never offered Hampton a plea deal and that Hampton "at all times insisted that he wanted a trial."  (Gov't Resp. 44 n.9.)

Defendants have a Sixth Amendment right to counsel during plea negotiations. *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (citing *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)).  "A defendant can show prejudice if, due to counsel's deficient advice, the defendant lost the opportunity to accept a plea agreement and trial led to a more severe sentence." *Herrera-Genao v. United States*, 641 F. App'x 190, 192 (3d Cir. 2016) (citing *Lafler*, 566 U.S. at 168).  But "[i]f no plea offer was made, [ ] this issue 'simply does not arise,' and the defendant cannot demonstrate prejudice." *Id.* (quoting *Lafler*, 566 U.S. at 168) (citing *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000)

("[T]o establish . . . prejudice, the petitioner must begin by proving that a plea agreement was formally offered by the government.")).  Hampton does not contend that the Government offered him a plea deal nor dispute the Government's position that it did not.  Accordingly, Hampton cannot demonstrate that counsel's alleged failure to negotiate a favorable plea prejudiced him.

## M

Hampton claims in Argument M that counsel was ineffective for failing to object to the PSR and argue for a lesser sentence.  (Mot. 30.)  He argues counsel was ineffective for: (1) failing to object to the use of his compelled incriminating statements at sentencing; (2) failing to object to the multiplicity of Counts 19 and 20; (3) failing to object to the duplicity of Counts 2 through 18; (4) failing to argue that a conviction under § 1028A requires knowledge that the stolen identity belongs to a real person; (5) failing to object to the PSR's calculation of true monetary loss; (6) failing to object to the PSR's calculation of the number of victims; (7) failing to object to restitution; (8) failing to seek additional prison time credit for time he spent incarcerated after his arrest; (9) failing to seek additional prison time credit for time he spent out on bail; and (10) failing to object to the inclusion in the PSR of a property his brother owned.  (*Id.* at 30–33.)  Each argument fails.

Hampton's argument as to the first objection fails largely for the reasons discussed in Part III.B of this Memorandum.  It also fails because Hampton does not identify any compelled statements in the PSR or explain how the Court used his allegedly compelled statements at sentencing.  His claims regarding the second and third objections fail for the reasons given in Parts III.A and III.G.

19

Hampton's argument that counsel was ineffective for not objecting to the PSR on the grounds that a conviction under 18 U.S.C. § 1028A requires proof that he knew the victim was a real person is another non-starter.  Such an argument would not have had any impact at sentencing.  Hampton's fifth argument, that counsel was ineffective for not objecting to the loss calculation in the PSR, fails because he does not explain how the loss calculation was incorrect or present any evidence to support his position.  His argument that counsel was ineffective for failing to object to the calculation of victims in the PSR also fails because counsel did, in fact, object on those grounds.  (ECF 306 ¶ 2.)  Hampton's seventh argument also fails because he may not challenge the restitution order through a § 2255 motion.  *Ridley v. Smith*, 179 F. App'x 109, 111 (3d Cir. 2006); *United States v. Trimble*, 12 F. Supp. 3d 742, 746 (E.D. Pa. 2014) ("[A] challenge to a restitution order brought under the guise of an ineffective assistance of counsel claim is [ ] not cognizable in a habeas petition because it does not seek release from custody.").  Hampton's next argument that counsel was ineffective for not objecting to the PSR and requesting additional time credit is another non-starter because counsel raised the issue at sentencing.  (Sent. Hr'g Tr. 89:14–90:24.)  Even if he had not raised the issue, exclusive authority to calculate credit for time served rests with the Attorney General, acting through the Bureau of Prisons.  *Galloway v. Warden of FCI Ft. Dix*, 385 F. App'x 59, 62 (3d Cir. 2010).  Similarly, Hampton argues counsel was ineffective for not seeking prison time credit for time he spent on bail, an argument Supreme Court precedent directly forecloses.  *Reno v. Koray*, 515 U.S. 50, 65 (1995).  Finally, Hampton's argument that counsel was ineffective for not objecting to the inclusion in the PSR of the 58th Street House, which was titled in his brother's name, is

meritless.  Evidence at trial overwhelmingly showed Hampton led a conspiracy involving his brother and the 58th Street House.  *See* (ECF 323).  Any losses associated with that property were properly attributable to Hampton.

N

Hampton's final argument is that appellate counsel was ineffective for not raising the issues discussed in the § 2255 Motion, and in particular that Counts 19 and 20 were multiplicitous.  For the reasons given in Part III.A of this Memorandum, appellate counsel was not ineffective for failing to argue that Counts 19 and 20 were multiplicitous.  Counsel was not ineffective for declining to raise any of the other arguments in Hampton's Motion because each is meritless and appellate counsel has an independent duty to examine the record and "select[] the most promising issues for review."  *Jones v. Barnes*, 463 U.S. 745, 752 (1983).  Instead of showing that appellate counsel was ineffective for not raising the issues he presents in his § 2255 Motion, Hampton has shown that counsel exercised sound judgment in deciding not to raise any of his meritless arguments.

IV

When a district court denies claims in a § 2255 motion, the petitioner may only appeal "if a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue only where a petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, reasonable jurists would not debate the Court's ruling, and

Hampton has not made a substantial showing of a denial of a constitutional right.

An appropriate Order follows.

BY THE COURT:


 */s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
