IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> KENNETH HAMPTON | CIVIL ACTION <br> NO. 15-302-1 |

**PAPPERT, J.** March 23, 2023

### MEMORANDUM

The Court has written extensively about this case in various contexts over many years. In June of 2017, a jury convicted Kenneth Hampton on one count of conspiracy to commit wire fraud, seventeen counts of wire fraud and two counts of aggravated identity theft. (ECF 286.) The convictions stem from Hampton's direction and supervision of a scheme to fraudulently acquire real property in Philadelphia. Adding insult to injury, Hampton did all of this while ensconced in federal prison as he served an eighty-four-month sentence for orchestrating a counterfeit currency distribution conspiracy, something he did while on supervised release for an earlier counterfeiting conspiracy.

The Court sentenced Hampton to 200 months imprisonment, three years of supervised release, a $2,000 special assessment and $174,043.57 in restitution. (ECF 331). Since then, Hampton, as the Government correctly assesses it, has been "indefatigable" in his pursuit of a reduction of his sentence. (Gov't Resp. Opp. Def.'s Mot. Jud. Recommendation 1, ECF 503). Otherwise stated, he has tried everything he can think of to make an end run around serving his time. *See* (*id.* at 1–2; ECF 411, 425, 431, 432, 445, 446, 449, 451). His latest effort, ECF 501, asks the Court to

"recommend" that the Federal Bureau of Prisons place him in either a halfway house or on home confinement pursuant to the First Step Act, the CARES Act and related federal statutes.  More recently, Hampton filed another motion requesting the Court "to bring this case to completion," quoting Nelson Mandela and relying again on the danger posed to him by the Covid-19 virus "sweeping across the country, including throughout the federal prison system. (ECF 509.)

Hampton's request to have the BOP send him back home or to a halfway house (ECF 501) is a sixty-five-page *magnum opus* supplemented by a similarly overdone thirty-five-page reply (ECF 507).  His filings contain arguments cut and pasted from various sources (including, apparently, other inmates' filings—see ECF 503 at 4 n.3) and are replete with recycled and outdated statistics and observations from his previously rejected arguments.  They also cite, among others, National Public Radio, Human Rights Watch, members of Congress, the Associated Press, the *New York Times*, and even Ronald Reagan (from his 1967 inaugural address as Governor of California).

The trees which perished in service of Hampton's recent efforts died in vain.  To the extent the Court could "recommend" anything to the Bureau of Prisons, the decision of whether to place Hampton in a less restrictive environment is the BOP's to make.  In fact, the Court already told Hampton it cannot order the BOP to place him on home confinement.  (ECF 431 n.1.)  Even if the Court could dictate release to home confinement or a halfway house, it would not entertain the thought.  Reducing the restriction on Hampton's freedom with so much of his sentence remaining would fly in the face of the jury's verdict and the Court's carefully considered sentence.  It would

also endanger the public.  Kenneth Hampton is an intelligent, articulate, charming man.  Had he put these attributes to constructive use, the world may have been his oyster.  Instead, he became a career criminal, arguably not capable of rehabilitation and most likely to recidivate.  Nothing has stopped him from plying his illicit trade, not even incarceration in a federal prison.  Putting him "halfway" back into society puts all of society at risk.  *See* (ECF 431, 446, 451).

Second, to the extent Hampton's motion again seeks compassionate release, he fails to allege he exhausted his administrative remedies with respect to this new request, as opposed to the previously denied one.  *See* (ECF 501 at 2–3).  The exhaustion requirement is mandatory.  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  Even if Hampton fulfilled this requirement, the Court's prior denials govern his latest attempt as well.  He alleges similar purported physical maladies that previously failed to establish extraordinary and compelling circumstances warranting release.  *See* (ECF 431, 436).  And again, even if he could demonstrate circumstances justifying his premature reintegration into society, yet another faithful application of the Section 3553(a) factors compel keeping Hampton in his current environs.

An appropriate Order follows.

BY THE COURT:

 */s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.